It pleases the court, on behalf of the Ortiz family, the petitioners of this matter, Gaurish Srini. This whole case is based, and the BIA decision is based, on a criminal conviction. It misinterprets the whole basis of my client's claim, which was that he was falsely accused because his father was a union activist in Guatemala. But our prior decision validated the fact. You'll help me here. Our prior decision in this court, if I'm not wrong, had the exact issue there. We decided that he had testified that he'd been convicted, that he served three years. It's the law of the case. So now he comes back and says, no, it was a whole different picture. Now, what do we do with our prior decision? I'll accept your argument that you're making, but tell me how I deal with that because of the prior decision of this Court. Three things, Your Honor. The prior decision and why we're here is dealing with a motion to reopen under two provisions. Under Convention Against Relief, Convention Against Torture, I'm sorry, and his motion to reopen under the Life Act. We're not here discussing anything in the past. The prior panel of the Ninth Circuit dealt with the issue that my client should file a motion within the 90 days, which he did. No. The point is he's now contesting his prior conviction, where, in fact, in our prior decision of this Court, we said that he was convicted, and that's the law of the case. We can't go back and say, well, now we're going to look into that conviction. The fact of his conviction has been determined by this Court already, period. That's not the issue. The issue is this conviction was based on false accusations, and he's saying if I go back to that same country, they're going to falsely accuse me right now of being a child molester, of being something else. They're going to throw me in prison. They're going to torture me and beat me. That's the claim, not the conviction. The conviction is the government of Guatemala will single me out for torture, Your Honor. That's the issue. And the issue, again, which was misrepresented throughout, unfortunately, isn't dealing with trafficking of drugs. It's dealing with being accused of trafficking of drugs. We don't even know what he was convicted of, if he was convicted of anything, or aspirins or whatever. There's nothing in the ground. He said that as an affirmative application on his asylum claim. Yes, Your Honor. Under the Convention Against Torture, one is entitled to deferral of removal even though one's convicted of a crime. Is that not correct? That is the whole purpose of the law. So we don't really need to necessarily be talking about whether he was convicted or not. Can't we just consider whether he's entitled to deferral because he might be tortured? That's the only issue before you, and that's the issue why we said the BIA was irrational. They didn't deal with that. They dealt with basically with the issue is that he's a criminal convict. And if he was a criminal convict, yes, if he goes back and he breaks the law, he should be put in jail. That's not the issue. The issue over here is he's claiming protection on the grounds of being falsely charged based on activities that his father was involved in. Well, see, where I get a problem is once we decided that he was convicted, we had to determine the nature of what that was. When we found the nature of that, you're now saying, well, even though I was convicted, forget about what that means because I was tortured and I really didn't do that. So I've got a conflict here that I can't resolve. Once we found that he admitted that he was convicted for his drug trafficking, we use that in our analysis. But you're saying, no, don't do that because even though he was convicted, it didn't mean anything. So what do I say about our prior decision? Well, it was good. He admitted that he drug trafficked, but it doesn't mean anything. I'm not too sure what we do with our prior decision. Yeah, that's not what I'm saying. I'm not saying he ever said he was ever. Well, what do you have in it? I just want to make sure that the prior panel's ruling basically goes back to retroactivity of a foreign conviction. That's what basically that decision dealt with. But it has. It dealt with the. Conviction has ramifications to the case at this point. Well, if it has ramifications, then the issue is if an individual is convicted falsely of a crime. That's not the. You can't do that. But that's the issue. You're collaterally attacking a decision we've already made where he admitted he was convicted of the crime. He didn't say there, I was falsely convicted, so it's no good. We found absolutely. No, Your Honor. He's always said he's never even had a hearing on this. He's never had an issue on this. If you go back to the. You have it in the transcript, in the 1995 transcript. He never even had an opportunity to state why he was even having an asylum claim. But that's neither here nor there. The issue before you is he just wants an opportunity to present forward his convention against torture claim. He's never had a hearing on any basis. The immigration judge that heard his case in 1995, Judge Segal. Question from our prior opinion. Question. And you were convicted of trafficking in drugs. Had you been convicted, and that's why you were serving three years in jail? Yes, sir. You can go to transcript page 17. That's a misquote, Your Honor. It states. That's our opinion. Are you saying our opinion is wrong? No, I'm not saying your opinion is wrong, Your Honor. I'm not. I don't want to argue with you. I'm just having a real hard problem because of what we did before. I have to deal with what our prior panel did. Okay. But this is a question. I would respectfully wish to disagree with you and disagree with my co-judge. As I understand, the convention against torture does not bar one from deferral of removal, even if one has committed a serious crime, if, in fact, one's going to be tortured when you're sent back. That's the issue we're dealing with. And that's basically the issue which the BIA did not deal with. And that's why we're here before you. We want a hearing on that. We've never been presented or allowed an opportunity to present that case. Thank you very much. Counsel, am I wrong? Not at all. Okay. You're right. Good morning, Your Honors. My name is Jackie Dryden, for the record. Four years ago, we were here with regard to Mr. Ortiz's deportability. And this Court rightfully found that Mr. Ortiz's drug trafficking conviction was for an aggravated felony. We're now here to determine whether or not he is eligible for relief, eligible for protection under the Convention Against Torture. Well, counsel, when he was sent back down, they never looked at the merits, did they? Your Honor, they looked at the – they looked on the basis of the motion to reopen that Mr. Sorin filed with the Board of Immigration Appeals. The Board made a determination that Mr. Ortiz had not established primary face eligibility for protection under the Convention Against Torture. Well, did they look at the merits of whether he would be tortured, say, if sent back? They looked – with regard to a merit, if you're – if you're referring to a hearing, no, a hearing was not granted because Mr. Ortiz's motion to reopen did not even establish prima facie eligibility sufficient to reopen his proceedings to allow him to present evidence with regard to his torture claim. So what you're saying was that he didn't even state his prima facie case that would entitle him to a hearing on whether he would be tortured. Exactly, Your Honor. This Court's standard for a motion to reopen to apply for the – to apply for protection against – under the Convention Against Torture is that there must be substantial grounds and probative evidence, and Mr. Ortiz made a few cursory statements about what might happen to him if he were to return to – if he was returned to Guatemala, and the board looked at his statements, looked at the evidence he presented, and said that the police were even – He never had a hearing on that issue. But they looked at the motion. Well, that's – but what did they look at? They looked at the motion to reopen that he filed in order to determine whether or not he should even have a hearing, a full-blown hearing on this. And his motion to reopen did not even establish prima facie eligibility for relief under the Convention Against Torture. Who filed that motion on his behalf? I believe Mr. Sorin, but you can correct me if I'm wrong. And the board said what we're looking at here is that there's not – there's nothing to indicate that the police have any interest in Mr. Ortiz because of his father's union activities and his speculation to the contrary is not sufficient. And the board also found that his drug trafficking crimes presumptively – is presumptively a particularly serious crime, meaning that he would not be eligible for regular withholding of removal under the Convention Against Torture. And that's why, Your Honor, you're correct when deferral of removal is only – the only form of protection at issue. So what we really have got to determine is whether he made a prima facie case or not. Well, you have to determine whether or not the board abused his discretion or proper – in this case, whether the board properly found that he did not establish prima facie eligibility for protection under the Convention Against Torture based on the evidence in the record. And it just wasn't sufficient. The board looked at the evidence. It had his prior testimony from the hearing. There was barely any difference between his testimony with regard to what he would have said in his asylum claim had he been eligible for such relief in the first place and information that he included in his motion to reopen to apply for cat protection. And that's all that this board needs to look at – or I'm sorry, Your Honors, that this Court needs to look at is whether or not the board abused its discretion in denying that motion to reopen. Am I correct, being I've been wrong so far all along? I'm correct. The first hearing was an asylum hearing. The first hearing was to determine his – whether or not Mr. Ortiz was, in fact, deportable from the United States. Once the immigration judge found that he was deportable, there was some discussion – I might be hurt, I might be persecuted. Deportable because of the conviction. Exactly, Your Honor. Okay. And then next what happened? And I think there was some discussion about him being persecuted because at the time Convention Against Torture didn't exist. Under an asylum claim. Yes. And he – because of the finding that he was convicted of an aggravated felony, that he necessarily was not eligible for relief under asylum. That's it. But he had presented asylum evidence, testimony. Some. Okay. Some. But it wasn't – It was a terrible hearing because the asylum form which was presented didn't match him at all. He either had the wrong name on it or a different person. So then they asked him a few cursory questions. Well, he wasn't eligible for that form of relief anyway. There really wasn't any reason to continue along that. Well, where I'm going is then we take the next step. He now files a motion to reopen for the Convention on Torture. And they used the same hearing information to make that prima facie determination plus what? Plus the information he provided in the motion to reopen. Okay. So what they considered in determining he didn't make the prima facie cut was the old hearing under the asylum application plus the material that he submitted with the motion to reopen. The Board had ample evidence to look at in making this determination as to the motion to reopen for Convention against Torture. I do want to address a few other issues, if I may, really quickly. And, of course, if you have any questions about the cap protection, I'll be happy to answer those. With regard to Mr. Ortiz's application for adjustment of status, there's four requirements for that form of relief. And I won't go through all four of them, but I will say that he is ineligible for such relief because he is inadmissible under Section 212A to capital A, little I, capital II. And there is no waiver available for that. Likewise, he's ineligible for relief under the Life Act for the same reason. With regard to his eligibility for a waiver of that ground of inadmissibility, a 212H waiver, that, a 212H waiver is limited to an alien who has been convicted of possession of 30 grams or less of marijuana, and that does not seem to be the case on the facts here. Finally, with regard to 212C relief, Mr. Ortiz is not a lawful permanent resident, never has been, never was, and he's not eligible for that relief. So those are just additional claims that may not be addressed by this Court. Are there any further questions, Your Honors? Well, the standard we're looking at is whether he's more likely than not Ortiz will be tortured, and that's the only thing we're looking at under the evidence that was presented that we talked about. Exactly, Your Honor. And we review that for what, abuse of discretion? That you review the Board's determination for abuse of discretion, but the Board has to determine whether or not there were substantial grounds and probative evidence according to this Court's decision in Camalthus. And the Court, the Board did all that and came to the conclusion that Mr. Ortiz could not establish that it was more likely than not that he would be tortured based on the evidence he presented to the Board. All right. Anything else? Thank you, Your Honor. Thank you. Thank you very much, Your Honor. Basically, the last thing on the 212H, I don't know where counsel gets the credit grounds for marijuana. We don't know what, but I'm not going to even deal with that. The Board decision should be overturned because they did not look at the evidence, Your Honors. They didn't deal with my client's declaration, which is from transcript 00035238. And far more important, that's the subjective opinion, is the objective report, which is part of the record, which is the United States Department of State's Human Rights Report for Guatemala from 1998. It starts on transcript 00040. And on the first page, it states that basically in Guatemala, prison conditions remain harsh, arbitrary arrests and detentions, and general pretrial detentions remain problems. It goes on to state that intimidation and even murder of witnesses continues to be a problem, and there's a social cleaning movement, cleansing movement going on. And who are members of this social cleansing movement? Anybody defined as a contact who was released from prison, they're going to be murdered, and they found about 18 to 20 bodies in the capital city. This is basically the verifiable proof, objective facts. None of this was dealt with. None of this was discussed, either my client's objective here, his declaration. None of that was addressed.  The issue that was dealt with is the same issue, Your Honorable Judge, you dealt with, which was his criminal conviction. Nobody went beyond that. They looked at his criminal conviction. They had no other interest to see what else happened to him, why it happened, or what were the country conditions. Thank you very much. Very well. That is submitted. We'll come to the last case on our calendar, Dahl v. Ashcroft. Good morning, Your Honor.
judges: B. Fletcher, Pregerson, Brunetti